IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

_____

| | | |
|---|---|---|
| DAVID LAMAR JOHNSON, #255 052 | * | |
| Plaintiff, | * | |
| v. | * | 2:09-CV-339-WKW |
| | | (WO) |
| J.C. .GILES, WARDEN, *et al.*, | * | |
| Defendants. | * | |

_____

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Plaintiff, a state inmate incarcerated at the Ventress Correctional Facility located in Clayton, Alabama, brings this action pursuant to 42 U.S.C. § 1983 alleging that rights, privileges, or immunities afforded him under the Constitution or laws of the United States were abridged by the conduct and actions of Defendants. Plaintiff names as defendants Warden J. C. Giles, Lieutenant Alex Moses, Lieutenant Flowers, Lieutenant Carolyn Longmire, and Correctional Officer Stocks. Plaintiff requests trial by jury and seeks damages as well as declaratory and injunctive relief. Upon review of the complaint, the court concludes that it is due to be dismissed prior to service of process pursuant to the provisions of 28 U.S.C. § 1915(e)(2)(B).[1]

---

[1] A prisoner who is allowed to proceed *in forma pauperis* in this court will have his complaint screened in accordance with the provisions of 28 U.S.C. § 1915(e)(2)(B). This screening procedure requires the court to dismiss a prisoner's civil action prior to service of process, regardless of the payment of a filing fee, if it determines that the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary damages from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

## I. DISCUSSION

*A. The Disciplinary Claim*

Plaintiff complains that on March 18, 2009 Defendants Moses and Abercrombie conducted an illegal, unwarranted, and unreasonable search of his belongings outside of his presence. He further maintains that these defendants conspired to set him up and charge him with a false disciplinary infraction by planting a weapon among his belongings. Following a disciplinary hearing held on March 27, 2009, the hearing officer found Plaintiff guilty of violating Rule #52, unauthorized possession of a weapon or device that could be used as a weapon, and sanctioned him to 45 days in segregation and 30 days loss of all privileges. (*Doc. No. 1 and attachment*.)

To the extent Plaintiff's complaint may be read to assert an allegation that he was falsely charged with institutional misconduct, under the facts of this case, he does not state a violation of his constitutional rights. The filing of a false or unfounded misconduct charge against an inmate does not *per se* constitute a deprivation of a constitutional right where the inmate receives appropriate procedural due process protections. *See Wolff v. McDonnell*, 418 U.S. 539 (1974); *Freeman v. Rideout,* 808 F.2d 949 (2nd Cir. 1986); *Flanagan v. Shively,* 783 F. Supp. 922, 931-32 (M.D.Pa.), *aff'd,* 980 F.2d 722 (3rd Cir. 1992).

To the extent Plaintiff's claim may be construed as an allegation that the sanctions imposed as a result of being found guilty of violating Rule #52 violated his due process rights, he is entitled to no relief on the facts alleged. The Supreme Court has identified two

circumstances in which a prisoner, an individual already deprived of his liberty in the ordinary sense, can be further deprived of his liberty such that due process is required. "The first is when a change in a prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court. *See Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995); *see, e.g., Vitek v. Jones,* 445 U.S. 480, 492-93, 100 S.Ct. 1254, 1263-64, 63 L.Ed.2d 552 (1980) (holding that a prisoner is entitled to due process prior to being transferred to a mental hospital). The second is when the state has consistently given a certain benefit to prisoners (for instance, via statute or administrative policy), and the deprivation of that benefit 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' *Sandin,* 515 U.S. at 484, 115 S.Ct. at 2300; *see, e.g., Wolff v. McDonnell,* 418 U.S. 539, 558, 94 S.Ct. 2963, 2976, 41 L.Ed.2d 935 (1974) (prisoners may not be deprived of statutory 'good-time credits' without due process); *cf. Dudley v. Stewart,* 724 F.2d 1493, 1497-98 (11th Cir.1984) (explaining how the state creates liberty interests). In the first situation, the liberty interest exists apart from the state; in the second situation, the liberty interest is created by the state." *Bass v. Perrin*, 170 F.3d 1312, 1318 (11th Cir. 1999).

The Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement. *See Meachum v. Fano,* 427 U.S. 215, 225 (1976) (no liberty interest arising from Due Process Clause itself in transfer from low-to maximum-security prison because "[c]onfinement in any of the State's institutions is within the normal

limits or range of custody which the conviction has authorized the State to impose"); *Olim v. Wakinekona*, 461 U.S. 238, 245-246 (1983) (a prisoner has no constitutional right to be confined in a particular institution and may be subjected to an interstate transfer without implicating the Constitution). Moreover, an inmate in the Alabama prison system has no constitutionally protected interest in the procedure affecting his classification level, the privileges bestowed upon him, or confinement in the least restrictive prison environment because the resulting restraints are not so severe that they exceed the sentence imposed upon him. *Sandin*, 515 U.S. at 485 ("Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law."). Thus, the deprivations about which Plaintiff complains, without more, do not "exceed the sentence [imposed by the trial court] in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force." *Id*. at 484. This court must, therefore, determine whether the actions about which Plaintiff complains involve the deprivation of a state-created liberty interest as defined by the standard set forth in *Sandin*.

As the Supreme Court recently noted,

> *Sandin* involved prisoners' claims to procedural due process protection before placement in segregated confinement for 30 days, imposed as discipline for disruptive behavior. *Sandin* observed that some of our earlier cases, *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), in particular, had employed a methodology for identifying state-created liberty interests that emphasized "the language of a particular [prison] regulation" instead of "the nature of the deprivation." *Sandin,* 515 U.S., at 481, 115 S.Ct. 2293. In *Sandin,* we criticized this methodology as creating a disincentive for States to promulgate procedures for prison management, and as involving the federal courts in the day-to-day management of prisons. *Id.,* at 482-483, 115 S.Ct.

>2293.  For these reasons, we abrogated the methodology of parsing the language of particular regulations.
>
>>"[T]he search for a negative implication from mandatory language in prisoner regulations has strayed from the real concerns undergirding the liberty protected by the Due Process Clause.  The time has come to return to the due process principles we believe were correctly established in and applied in *Wolff* and *Meachum*.  Following *Wolff,* we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause.  But these interests will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.,* at 483-484, 115 S.Ct. 2293 (citations and footnote omitted).
>
>>After *Sandin,* it is clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves "in relation to the ordinary incidents of prison life."  *Id.,* at 484, 115 S.Ct. 2293.

*Wilkinson v. Austin*, 545 U.S. 209, 222-23 (2005).

Applying the *Sandin* inquiry, the court concludes that Plaintiff's temporary assignment to  segregation and loss of privileges "though concededly punitive, do[] not represent a dramatic departure from the basic conditions" of the sentence imposed upon him.  *Id*. at 485.  Plaintiff does not allege much less indicate that his temporary confinement on segregation or loss of privileges subjected him to "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Id.* at 484.  Because Plaintiff has not alleged deprivation of a protected liberty interest, his complaints in relation thereto fail to state  a due process claim.  *See id.* at 487; *Griffin v. Vaughn,* 112 F.3d 703, 706 (3rd Cir. 1997).

B.  *The Visitation Claim*

Plaintiff alleges that Defendants Stocks and Flowers deprived him of visitation with his wife on March 21, 2009. Plaintiff regards this as actionable conduct because, he argues, he was not subject to a loss of privileges at the time and his wife had been cleared for visitation. (*Doc. No. 1*.)

Neither prisoners nor their would-be visitors have a constitutional right to prison visitation. *Kentucky Department of Corrections v. Thompson*, 490 U.S. 454 (1989). The viability of claims regarding visitation privileges is even more suspect under *Sandin*, 515 U.S. 472. As noted, a prison occurrence may amount to a deprivation of a liberty interest entitled to procedural protection under the Due Process Clause of the Constitution if (1) state statutes or regulations narrowly restrict the power of prison officials to impose the deprivation, and (2) the liberty interest in question is one of real substance. *Id*. at 483-84. The issue of real substance is limited to freedom from restraint that imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," or state action that "will inevitably affect the duration of [a] sentence." *Id*.

Here, the court finds that the restriction on visitation privileges about which Plaintiff complains, without more, is not an atypical and significant hardship on an inmate in relation to the ordinary incidents of prison life. Consequently, the court concludes that this claim is due to be dismissed under the provisions of 28 U.S.C. § 1915(e)(i). *See Neitzke*, 490 U.S. 319.

C. *The Conspiracy Claim*

With regard to Plaintiff's contention that Defendants Abercrombie and Longmire conspired to bring a false disciplinary charge against him, Plaintiff is entitled to no relief. A conspiracy claim justifiably may be dismissed because of the conclusory, vague, and general nature of the allegations of a conspiracy. *Fullman v. Graddick*, 739 F.2d 553, 556-557 (11th Cir. 1984).

The court has carefully reviewed Plaintiff's complaint. At best, his assertions are self-serving, purely conclusory allegations that fail to assert those material facts necessary to establish a conspiracy between Defendants Longmire and Abercrombie. Other than his self-serving allegations, Plaintiff presents nothing to this court which indicates that these defendants entered into a conspiracy to bring a false disciplinary charge against him. In light of the foregoing, the court concludes that Plaintiff's bare allegations of a conspiracy are insufficient to support a claim for relief under 42 U.S.C. § 1983. *Fullman*, 739 F.2d at 556-557.

*D. Defendant Giles*

Plaintiff names Warden Giles as a defendant to this cause of action but asserts no specific claims against him. To the extent Plaintiff files suit against Defendant Giles based on his supervisory role, such claim is subject to dismissal.

The law is settled that a defendant cannot be held liable in an action brought pursuant to 42 U.S.C. § 1983 under the theory of *respondeat superior* or on the basis of vicarious liability. *Monell v. Dept. of Soc. Servs.,* 436 U.S. 658, 692 (1978); *Belcher v. City of Foley*,

30 F.3d 1390, 1396 (11th Cir. 1994) (42 U.S.C. § 1983 does not allow a plaintiff to hold supervisory officials liable for the actions of their subordinates under either a theory of respondeat superior or vicarious liability); *see also Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (holding that a supervisory official is liable only if he "personally participate[d] in the alleged unconstitutional conduct or [if] there is a causal connection between [his] actions ... and the alleged constitutional deprivation."). Plaintiff's complaint against Defendant Giles on the basis of *respondeat superior* is, therefore, subject to dismissal under 28 U.S.C. § 1915(e)(2)(B)(i).

## II. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that Plaintiff's complaint be DISMISSED with prejudice and prior to service of process pursuant to the provisions of 28 U.S.C. § 1915(e)(2)(B)(i).

It is further

ORDERED that on or before **July 6, 2009** the parties may file objections to this Recommendation. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which a party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the

District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

      Done this 23rd day of June, 2009.


                                       /s/ Wallace Capel, Jr.
                                       WALLACE CAPEL, JR.
                                       UNITED STATES MAGISTRATE JUDGE